IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELAURENCE ROBINSON (R-20751), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18 C 5729 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| WEXFORD HEALTH SOURCES, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff DeLaurence Robinson, previously incarcerated at Stateville Correctional Center ("Stateville"), brings this § 1983 action *pro se* against the Estate of Dr. Saleh Obaisi, Dr. Elazegui, Dr. Aguinaldo, and Wexford Health Sources, Inc. ("Wexford"), the medical services vendor of the Illinois Department of Corrections. Plaintiff alleges that Dr. Obaisi, Dr. Elazegui, and Dr. Aguinaldo, while employed by Wexford, provided constitutionally inadequate medical care to plaintiff during his incarceration at Stateville and were deliberately indifferent to the serious medical need stemming from his chronic knee pain. Plaintiff also claims that these physicians provided inadequate medical care based on Wexford's unconstitutional policy or practice.

Defendants seek summary judgment. Defendants contend that Plaintiff is not entitled to a trial because he has not produced evidence demonstrating that the physician-defendants' treatment was sufficiently far afield of accepted professional judgment, nor any evidence showing that Defendant Wexford maintains an unconstitutional policy or practice related to his treatment. For the following reasons, the Court grants Defendants' motion for summary judgment.

I.     **Summary Judgment Standard**

On summary judgment, the Court must view the record in the light most favorable to the non-moving party and grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021); Fed. R. Civ. P. 56(a). As the moving party, Defendants bear the initial burden of demonstrating the basis of their motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, however, Plaintiff must point to specific admissible evidence that shows the existence of a genuine, triable issue. *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 934-35 (7th Cir. 2021). "A dispute of fact is material if the fact 'might affect the outcome of the suit under the governing law.'" *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584-85 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

II.    **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Walridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). Local Rule 56.1 requires the moving party to provide a statement of material facts that supports "[e]ach asserted fact" with "citation[s] to the specific evidentiary material, including the specific page number, that supports it." LR 56.1 (d)(2); *see* LR 56.1(a)(2). "The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." L.R. 56.1(b)(3). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

In accord with the Local Rules, Defendants filed a statement of material facts along with their motion for summary judgment. (Dkt. 94.) Each substantive assertion of fact in the Local Rule 56.1(a)(2) statement is supported by evidentiary material in the record. Defendants also filed and served on Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (Dkt. 96.)

Plaintiff, for his part, responded to Defendants' statement of material facts by, wholly or partially, conceding some of the asserted facts while disputing others. (Dkt. 107.) Defendants, in their reply[1] in support of summary judgment, point to a number of facts that Plaintiff either failed

---

[1] Plaintiff filed a motion for leave to file a surreply (*see* Dkt. 116); however, he provided only a vague allegation for the basis of his proposed motion. Parties are not entitled to file surreplies without leave from the Court. Whether to grant a motion for leave to file a surreply is within the Court's discretion. *Johnny Blastoff, Inc. v. L.A. Rams*, 188 F.3d 427, 439 (7th Cir. 1999). The Court's review of the record demonstrates that it is fully developed, and that Defendants' motion for summary judgment was thoroughly briefed by each party. Defendants, in their reply, did not raise any new arguments in rebutting Plaintiff's response. *See Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (recognizing that a surreply may be needed when an adversary raises new arguments in their reply brief, but also noting there is no need for a surreply when each brief in sequence fairly responds to the brief that preceded it). Accordingly, the Court exercises its discretion and denies Plaintiff's motion for leave to file a surreply.

to properly dispute with a specific citation to the evidentiary record or to which he provided no response at all. (Dkt. 113.) To the extent the Court deems those facts material, they are admitted. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). In Plaintiff's response, he also included a section labeled as additional material facts and submitted exhibits in support. (Dkt. 107.) A number of facts set forth in those additional material facts also fail for the same reason—they are not supported with specific citations to the evidentiary record. To the extent any of those facts contradict Defendants' version of the material facts, and to the extent defendants' version is backed by citations to evidence, the Court will accept Defendants' version.

### III. Undisputed Relevant Facts

Plaintiff has suffered from pain in his left knee for several years. Throughout 2016, Plaintiff was seen by medical providers on 20 separate occasions. (Dkt. 94, ¶¶14, 17.) Based on a December 2015 physical therapy referral by an unnamed physician, Plaintiff attended 11 physical therapy appointments related to his left knee pain. (*Id.* at ¶17.) On seven other occasions, Plaintiff was seen by medical providers for a variety of ailments. (*Id.*) A physician assistant twice refilled his pre-existing prescription for Robaxin and prescribed analgesic balm. (*Id.*) In 2016, Plaintiff saw Dr. Obaisi twice. (*Id.* at ¶14.) On June 27, 2016, Plaintiff complained to Dr. Obaisi about back and neck pain, as well as a small "pebble" at the base of his penis. (*Id.*) Six months later, Plaintiff returned to see Dr. Obaisi on December 29, 2016. (*Id.*) During that visit, Plaintiff complained about back pain, and Dr. Obaisi renewed Plaintiff's left knee sleeve permit. (*Id.*)

On January 10, 2017, Plaintiff spoke with a nurse about pain in his left knee. (*Id.* at ¶19.) Two days later, a physician assistant completed a new physical therapy referral, as Plaintiff

4

requested. (*Id.* at ¶20.) Plaintiff was referred to see Defendant Dr. Aguinaldo, who saw Plaintiff on January 28, 2017, and renewed his left knee sleeve permit. (*Id.* at ¶21.) Plaintiff was subsequently transferred out of Stateville, and he would not see Dr. Aguinaldo again until December 2017, when Plaintiff returned to Stateville. (*Id.* at ¶22.) Once back at Stateville, Plaintiff was seen by medical providers on December 16, 2017, when he requested a new back brace, and on December 18, 2017, when he made subjective complaints to an IDOC employee of popping and clicking in his left knee. (*Id.*) Dr. Aguinaldo saw Plaintiff the next day, December 19, 2017, about his back and left knee pain. (*Id.*) Dr. Aguinaldo ordered x-rays and pain relief medication for Plaintiff. (*Id.*) The next and last visit Plaintiff had with Dr. Aguinaldo occurred on January 13, 2018. (*Id.* at ¶24.) At that final visit, Dr. Aguinaldo explained to Plaintiff that his x-ray readings were normal. (*Id.*) Dr. Aguinaldo referred Plaintiff to the Medical Director to discuss Plaintiff's subjective complaints of unresolved pain. (*Id.*)

Plaintiff saw Defendant Dr. Elazegui, Stateville's Medical Director, on March 5, 2018. (*Id.* at ¶28.) There, Plaintiff made subjective complaints of left knee pain. (*Id.*) Dr. Elazegui prescribed Tylenol, renewed Plaintiff's left knee sleeve permit, ordered x-rays, and referred Plaintiff to have a physical therapy evaluation. (*Id.*) Plaintiff's x-ray readings were again normal, with no bone or joint pathology. (*Id.*)

Thereafter, on March 19, 2018, Plaintiff started a new course of physical therapy to treat his knee pain. (*Id.* at ¶29.) Between April 23, 2018, and July 9, 2018, Plaintiff was seen for physical therapy on 11 separate occasions. (*Id.* at ¶32.) Following an August 2018 injury, after Plaintiff had been running and playing basketball, Plaintiff had an ultrasound performed on his left knee, the results of which were negative. (*Id.* at ¶¶36, 38–39.) In December 2018, Plaintiff was issued a low bunk permit. (*Id.* at ¶41.) Throughout 2018, Plaintiff continued to receive prescriptions for pain

5

relief medication, which included, at least, Tylenol and Naprosyn. (*Id.* at ¶¶28, 33, 35.) Based on a December 2018 referral, Plaintiff received an MRI scan to his left knee on March 5, 2019. (*Id.* at ¶39.) Together with Plaintiff's subjective complaints of left knee pain and the MRI scan results, a new Stateville Medical Director renewed Plaintiff's left knee sleeve and low bunk permits, prescribed him Tramadol, and referred him to physical therapy. (*Id.* at ¶43.) In July 2019, at the recommendation of the physical therapist, Plaintiff was ordered to receive a one-year permit for gel insoles. (*Id.* at ¶45.) By the time Plaintiff completed his physical therapy, discharging him to home exercise on October 2, 2019, the physical therapist noted that he had full range of motion, no weakness, and a normal gait. (*Id.* at ¶46.)

**IV.     Analysis**

The Eighth Amendment prohibits cruel and unusual punishment, protecting inmates from the unnecessary and wanton infliction of pain, including grossly inadequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 102–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). Deliberate indifference to serious medical needs is tantamount to the unnecessary and wanton infliction of pain. *Estelle*, 429 U.S. at 102–04. To establish a violation of the Eighth Amendment, Plaintiff must show that he had an objectively serious medical condition to which the defendants were deliberately indifferent. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles*, 771 F.3d at 409. Deliberate indifference occurs when defendants are aware of and disregard a serious risk to an inmate's health. *Dean*, 18 F.4th at 241.

Putting aside defendant Wexford for now, the remaining defendants are all physicians. Plaintiff must establish that these defendants were more than negligent in treating his knee pain.

6

*Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). Neither medical malpractice alone, *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000), nor dissatisfaction with a doctor's prescribed course of treatment, *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), will violate the Eighth Amendment. Rather, Plaintiff must present facts from which a jury could find that the physicians' treatment of his knee pain was "so plainly inappropriate as to permit the inference that the [physicians] intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008); *see also Duckworth v. Ahmed*, 532 F.3d 675, 679 (7th Cir. 2008) ("A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.") (internal quotations omitted).

Since the parties do not address whether Plaintiff suffered from an objectively serious medical condition, the Court assumes there is no dispute over the seriousness of Plaintiff's left knee pain. The Court therefore focuses on whether there exists a genuine issue of material fact that Defendants acted with deliberate indifference to Plaintiff's left knee pain.[2] That is, the Court considers whether there is a genuine dispute over whether defendants provided medical care that was so plainly inappropriate as to amount to intentionally disregarding Plaintiff's needs.

While not set out in the clearest of formats, Plaintiff's contentions against each physician-defendant appear to be the same—that Drs. Obaisi, Aguinaldo, and Elazegui were each deliberately indifferent to Plaintiff's medical needs by prescribing ineffective pain relief medication and by refusing to approve a low bunk permit and order an MRI scan on Plaintiff's left

---

[2] Plaintiff purports to expand the timeframe of his lawsuit to predate his first visit with Dr. Obaisi. (Dkt. 107, p. 16, ¶13.) Plaintiff's earliest visit with a named defendant occurred in 2016 with Dr. Obaisi. Section 1983 creates liability based on personal liability and predicated on fault. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Plaintiff has not named an individual who provided medical care earlier than his first visit with Dr. Obaisi and later than his visit with Dr. Elazegui. The Court confines its analysis of material facts to the timeframe between those two visits.

7

knee. No matter how many times he saw medical care providers, from his first visit with Dr. Obaisi to his visit with Dr. Elazegui, in Plaintiff's opinion, the defendants did not adequately treat his left knee pain. Plaintiff asserts that, more often than not, he complained during his appointments with medical providers about his left knee pain and requested a low bunk permit, an MRI scan, and, one time, a cortisone shot. As evidence, he points to his declaration, which mostly contains personal opinion, speculation, and legal argument, mixed with some assertions based on personal knowledge.

He also directs the Court to the results of a 2019 MRI scan, which not only took place between a year and two and a half years after his visits with the defendants, but also after another injury, to show that the medical care provided by the defendants was inadequate. The parties also dispute whether, in addition to the medical care described herein, Plaintiff occasionally refused treatment. But even if the Court accepts Plaintiff's declaration as true together with the 2019 MRI scan results, and even if it views all facts and draws all reasonable inferences in Plaintiff's favor, the Court does not discern any genuine issue of material fact.

Defendant Dr. Obaisi saw Plaintiff twice in 2016: first, on June 27, 2016, and then on December 29, 2016. During Plaintiff's first visit, he complained about back pain and a pebble at the base of his penis. During Plaintiff's second visit, he complained about back pain, and Dr. Obaisi renewed his left knee sleeve permit. Assuming Plaintiff discussed more details during these two visits in 2016, *e.g.*, inquiring about approval for an MRI scan, Plaintiff's medical care with Dr. Obaisi is in the context of 11 physical therapy appointments related to his left knee pain and seven additional visits with prison medical providers for a variety of ailments, some of which may have also included complaints about left knee pain. A physician assistant also refilled his pre-existing prescriptions for Robaxin and prescribed analgesic balm. Regardless of the future MRI scan and

Plaintiff's desire for a different course of treatment, Dr. Obaisi's medical decision to not order an MRI scan at the time of his limited treatment of Plaintiff does not amount to deliberate indifference. *See Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.");[3] *Snipes*, 95 F.3d at 592 ("A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim.").

Even if there is some way in which the medical care Dr. Obaisi provided during these two visits was inappropriate, these are isolated occurrences with no evidence of neglect and no further evidence of any interaction between the two parties in the intervening six months, especially when set against the backdrop of Plaintiff's medical care in 2016. *Cf. Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) ("A finding that a defendant's neglect of a prisoner's condition was an 'isolated occurrence,' . . . or an 'isolated exception' . . . to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference."). No reasonable jury could infer deliberate indifference based on Plaintiff's two isolated visits with Dr. Obaisi and the rest of his 2016 medical care.

Plaintiff's medical care with Dr. Aguinaldo and Dr. Elazegui followed a similar pattern. Plaintiff first saw Dr. Aguinaldo on January 28, 2017, when Dr. Aguinaldo renewed his left knee sleeve permit. This visit came after complaining to a prison nurse about knee pain and after a new referral to undergo physical therapy treatment. Eleven months later, in December 2017, Plaintiff had his next visit with Dr. Aguinaldo. Between these two visits, Plaintiff was transferred from, and back to, Stateville. On Plaintiff's second visit with Dr. Aguinaldo, Plaintiff complained about back pain and knee pain, reporting that his left knee had been making a popping and clicking sound. Dr.

---

[3] Plaintiff himself seems to recognize that "[a]n MRI is simply a diagnostic tool and the decision to forego diagnostic tests is 'a classic example of a matter of medical judgment.'" (Dkt. 108, p. 7, citing *Estelle*, 429 U.S. at 107.)

9

Aguinaldo ordered x-rays and prescribed pain relief medication. On Plaintiff's third and final visit with Dr. Aguinaldo on January 13, 2018, the doctor discussed Plaintiff's x-ray readings. Although the readings were normal, Dr. Aguinaldo referred Plaintiff to the Medical Director about his unresolved subjective knee pain.

Again, Plaintiff relies on the results of a future MRI scan and his desire for a different course of treatment to prove Dr. Aguinaldo acted with deliberate indifference. *Cf. Estelle*, 429 U.S. at 107; *Snipes*, 95 F.3d at 592. Plaintiff's treatment at Stateville in 2017 is in the context of a renewed knee sleeve permit, referral to undergo physical therapy treatment, prescription for pain relief medication, and a x-ray exam. *Cf. Gutierrez*, 111 F.3d at 1375. If Plaintiff has raised any factual dispute, it is as to whether his physicians were negligent—but mere negligence does not violate the Eighth Amendment. *Walker*, 233 F.3d at 499 ("A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms . . . [b]ut malpractice alone is not enough to meet the constitutional standard."); *Sellers*, 41 F.3d at 1102 ("Negligence is not actionable under the Eighth Amendment.").

Plaintiff had a single visit with Dr. Elazegui on March 5, 2018, where he complained about his left knee pain. Dr. Elazegui prescribed Tylenol, renewed Plaintiff's left knee sleeve permit, ordered x-rays (which came back normal), and referred him to a physical therapy evaluation. That is the extent of Plaintiff's interaction with Dr. Elazegui. Prior to the March 5 visit, Plaintiff's medications were refilled. After the visit, Plaintiff started a new course of physical therapy treatment based on his evaluation. At the end of his physical therapy treatment in July 2018, Plaintiff had full range of motion in his lower extremities, functional mobility, and no functional deficits, instability, inflammation or swelling in his knees. He also was able to play basketball. Yet again, Plaintiff relies for contrary evidence on nothing other than the results of a future MRI scan

and his desire for a different course of treatment. Based on Plaintiff's overall medical care surrounding his visit with Dr. Elazegui, which indicates he received prompt and continuous medical care, Plaintiff has not demonstrated a genuine issue of material fact. *See Estelle*, 429 U.S. at 107; *Walker*, 233 F.3d at 499; *Gutierrez*, 111 F.3d at 1375; *Snipes*, 95 F.3d at 592.

While not material to this lawsuit, it is worth noting the following observations in the record. After Plaintiff's interactions with the physician-defendants, as Plaintiff repeatedly points out, he had an MRI scan in March 2019. Notwithstanding that the MRI scan was ordered by an unnamed physician, and followed an injury where Plaintiff had been running and playing basketball, his medical care changed little afterward. Plaintiff continued to see a physical therapist, receive a prescription for pain relief medications, and have his left knee sleeve permit renewed. True, he received a prescription for Tramadol, but this additional medication makes no material difference. The medical care Plaintiff received that is material to his lawsuit against the physician-defendants was well within the bounds of professional judgment, including when and whether to prescribe an opiate to treat pain. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("The decision to prescribe non-narcotic pain medication was within the bounds of professional judgment.") (citing *Snipes*, 95 F.3d at 592 ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.")).

Plaintiff has not demonstrated, and the record does not reveal, a genuine issue of material fact as to whether Plaintiff's medical care by the three physician-defendants was "inhumane or a denial of the minimal necessities of a civilized society." *Snipes*, 95 F.3d at 592; *see also Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (explaining "inmates' lay testimony by itself cannot establish the showing of medical causation necessary to sustain" a deliberate indifference claim).

11

It is axiomatic that the Eighth Amendment neither entitles Plaintiff to his preferred medical care nor the best care possible. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (citing *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)). And "[m]edical decisions that may be characterized as classic examples of matters for medical judgment . . . such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes*, 95 F.3d at 591 (internal quotations, brackets, and citations omitted). Plaintiff "is entitled to reasonable measures to meet a substantial risk of serious harm," *Arnett*, 658 F.3d at 754, and he received them. The physician-defendants examined plaintiff and used their medical judgment to determine the course of treatment for plaintiff's knee issue. Considering Plaintiff's undisputed medical care from 2016 through 2018, no reasonable jury could infer deliberate indifference against the three physician-defendants.

Finally, liability cannot attach to Wexford where there is no underlying constitutional violation by the physician-defendants. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

## V.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [93] is granted. Plaintiff's motion for leave to file a surreply [116] is denied as futile, and therefore, Plaintiff's motions for an extension of time to file a sur-reply [117] and for sanctions on Defendants [118] are denied as moot. Final judgment shall enter for Defendants.[4]

---

[4] If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However,

**SO ORDERED.**                                                                              **ENTERED: February 24, 2022**

<br>

                                                                  **JORGE L. ALONSO**
                                                                  **United States District Judge**

---

if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).